UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KATHRYN PARKER and PAUL PARKER, | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) NO: |
| | ) |
| ADVOCATE HEALTH AND HOSPITALS | ) |
| CORPORATION a/k/a ADVOCATE GOOD | ) |
| SAMARITAN HOSPITAL, | ) |
| ROSEN MEDICAL GROUP LLC, | ) |
| a/k/a LIFEWEIGH BARIATRICS, | ) |
| ALLEN MIKHAIL, M.D. and | ) |
| JEFFREY ROSEN, M.D. | ) |
| Defendants. | ) |

## COMPLAINT

### Jurisdiction and Venue

Plaintiffs, KATHRYN PARKER and PAUL PARKER, by their counsel, KENNETH J. ALLEN & ASSOCIATES, P.C., and for their Complaint, allege and state as follows:

1.    Plaintiffs, KATHRYN PARKER and PAUL PARKER, are citizens of the State of Indiana.

2.    Defendant, ADVOCATE HEALTH AND HOSPITALS CORPORATION a/k/a ADVOCATE GOOD SAMARITAN HOSPITAL, is a corporation incorporated in the State of Illinois with its principal place of business located in the State of Illinois.

3.    Defendant, ROSEN MEDICAL GROUP LLC a/k/a LIFEWEIGH BARIATRICS, is an Illinois limited liability company. Its sole member is Jeffrey Rosen who is a citizen of the State of Illinois. Therefore, for purposes of diversity jurisdiction, ROSEN MEDICAL GROUP LLC a/k/a LIFEWEIGH BARIATRICS is a citizen of the State of Illinois.

1

4. Defendant, ALLEN MIKHAIL, M.D., is a citizen of the State of Illinois.

5. Defendant, JEFFREY ROSEN, M.D., is a citizen of the State of Illinois.

6. This action is between the citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000. Therefore, this court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) as defendants reside within this district and a substantial part of the events and omissions giving rise to plaintiffs' claims occurred within this district.

## COUNT I - Advocate Health and Hospitals Corporation

Plaintiff, KATHRYN PARKER, by her counsel, KENNETH J. ALLEN & ASSOCIATES, P.C., complaining of the Defendant, ADVOCATE HEALTH AND HOSPITALS CORPORATION a/k/a ADVOCATE GOOD SAMARITAN HOSPITAL, alleges and states as follows:

1-7. KATHRYN PARKER (hereinafter "Kate") incorporates by reference the allegations in paragraphs 1 through 7 of the Jurisdiction and Venue section of this Complaint.

8. At all times relevant to this action, ADVOCATE HEALTH AND HOSPITALS CORPORATION a/k/a ADVOCATE GOOD SAMARITAN HOSPITAL (hereinafter "Hospital") owned, managed, operated, maintained and controlled a hospital facility located at the common address of 3815 Highland Avenue, Downers Grove, County of DuPage, State of Illinois.

9. At all times relevant to this action, Hospital rendered medical care and treatment to persons suffering from various conditions and ailments and that care and treatment included the ownership, management, operation, maintenance and control of a hospital and operating rooms which provided, as part of the care and treatment

rendered to patients, nursing and physician care, and all of such services were provided for monetary consideration.

10.     On or about February 1, 2010, and for a period of time thereafter, Kate was admitted to Hospital for the purpose of receiving medical treatment, including but not limited to, undergoing gastric bypass surgery.

11.     On or about February 1, 2010, Kate was admitted to Hospital and was under the care of Jeffrey Rosen, M.D., Allen Mikhail, M.D., as well as the nursing staff of Hospital, all of whom acted as agents and employees of Hospital and were acting within the scope of their employment relationship with Hospital.

12.     That on or about February 1, 2010, and for a period of time prior thereto, Jeffrey Rosen, M.D. was a physician licensed to practice medicine in Indiana and Illinois and was on the aforesaid date, so engaged and was admitted to the staff of Hospital for the purpose of practicing his profession.

13.     That on or about February 1, 2010, and all times relevant to this action, Jeffrey Rosen, M.D. was an employee and agent of Hospital, and was acting within the scope of his employment relationship with Hospital.

14.     That on February 1, 2010, and for a period of time prior thereto, Allen Mikhail, M.D. was a physician licensed to practice medicine in Indiana and Illinois and was on the aforesaid date, so engaged and was admitted to the staff of Hospital for the purpose of practicing his profession.

15.     That on or about February 1, 2010, and all times relevant to this action, Allen Mikhail, M.D. was an employee and agent of Hospital, and was acting within the scope of his employment relationship with Hospital.

16.     At all times relevant to this action, Hospital owed a duty to Kate and others similarly situated to exercise reasonable care while rendering medical treatment and owed a duty to follow the standard of care imposed by Illinois Law.

17.     Notwithstanding said duty, Hospital rendered medical treatment to Kate in a careless and negligent fashion and failed to follow the standard of care in one or more of the following respects, *inter alia:*

(A)     Carelessly and negligently took an incomplete patient history of Kate;

(B)     Carelessly and negligently performed an incomplete and inadequate examination on Kate;

(C)     Carelessly and negligently performed incomplete and inadequate testing on Kate;

(D)     Carelessly and negligently failed to have Kate's test results read or interpreted by a competent professional or specialist;

(E)     Carelessly and negligently failed to review and follow the instructions of Kate's treating physicians;

(F)     Carelessly and negligently failed to recognize signs and symptoms of extensive internal bleeding exhibited by Kate;

(G)     Carelessly and negligently failed to timely and properly treat Kate for extensive internal bleeding or to consult with an appropriate specialist for treatment of extensive internal bleeding;

(H)     Carelessly and negligently failed to provide an adequate number of appropriately trained personnel, either nurses and/or technicians, to monitor the condition of Kate;

(I)     Carelessly and negligently failed to provide personnel who were adequately trained to monitor the condition of Kate;

(J)     Carelessly and negligently failed, through their agents and employees, to properly monitor the condition of Kate; and/or

(K)     Carelessly and negligently failed, through their agents and employees, to exercise the degree of skill and proficiency exercised by reasonably careful, skillful and prudent registered nurses, technicians or other

healthcare professionals in the same class acting under the same or similar circumstances.

18. As a direct and proximate result of one or more or all of the aforesaid, wrongful acts or omissions of Hospital, through its agents and/or employees, Kate sustained severe and permanent personal injuries; incurred and will incur ambulance, hospital, diagnostic, therapeutic, surgical, pharmaceutical, and other medical expenses; suffered and will suffer physical pain, mental suffering, scarring, disability, loss of enjoyment of life, lost time, lost earnings and sustained a loss of capacity to earn wages in the future and sustained other injuries and damages of a personal and pecuniary nature.

**WHEREFORE**, KATHRYN PARKER, respectfully seeks the entry of judgment in her favor and against ADVOCATE HEALTH AND HOSPITALS CORPORATION a/k/a ADVOCATE GOOD SAMARITAN HOSPITAL for compensatory damages in an amount to be determined herein, for the costs of this action, and for any and all other relief that the Court may deem proper under the circumstances.

## COUNT II – Rosen Medical Group LLC a/k/a LifeWeigh Bariatrics

Plaintiff, KATHRYN PARKER, by her counsel, **KENNETH J. ALLEN & ASSOCIATES, P.C.**, complaining of the Defendant, ROSEN MEDICAL GROUP LLC a/k/a LIFEWEIGH BARIATRICS, alleges and states as follows:

1-7. KATHRYN PARKER (hereinafter "Kate") incorporates by reference the allegations in paragraphs 1 through 7 of the Jurisdiction and Venue section of this Complaint.

8. At all times relevant to this action, ROSEN MEDICAL GROUP LLC a/k/a LIFEWEIGH BARIATRICS (hereinafter "LifeWeigh") owned, managed, operated,

maintained and controlled a medical facility located at the common address of 2801 Finley Road, Downers Grove, Illinois.

9.     At all times relevant to this action, LifeWeigh rendered medical care and treatment to persons suffering from various conditions and ailments and that care and treatment included the ownership, management, operation, maintenance and control of a medical facility which provided, as part of the care and treatment rendered to patients, nursing and physician care, and all of such services were provided for monetary consideration.

10.     On or about February 1, 2010, and for a period of time thereafter, Kate was a patient of LifeWeigh for the purpose of receiving medical treatment, including but not limited to, undergoing gastric bypass surgery.

11.     On or about February 1, 2010, Kate was a patient of LifeWeigh and was under the care of Jeffrey Rosen, M.D., Allen Mikhail, M.D., as well as the nursing and support staff of LifeWeigh, all of whom acted as agents and employees of LifeWeigh and were acting within the scope of their employment relationship with LifeWeigh.

12.     That on or about February 1, 2010, and for a period of time prior thereto, Jeffrey Rosen, M.D. was a physician licensed to practice medicine in Indiana and Illinois and was on the aforesaid date, so engaged and was admitted to the staff of LifeWeigh for the purpose of practicing his profession.

13.     That on or about February 1, 2010, and all times relevant to this action, Jeffrey Rosen, M.D. was an owner, employee and agent of LifeWeigh, and was acting within the scope of his employment relationship with LifeWeigh.

14.     That on February 1, 2010, and for a period of time prior thereto, Allen Mikhail, M.D. was a physician licensed to practice medicine in Indiana and Illinois and was on the aforesaid date, so engaged and was admitted to the staff of LifeWeigh for the purpose of practicing his profession.

15. That on or about February 1, 2010, and all times relevant to this action, Allen Mikhail, M.D. was an owner, employee and agent of LifeWeigh, and was acting within the scope of his employment relationship with LifeWeigh.

16. At all times relevant to this action, LifeWeigh owed a duty to Kate and others similarly situated to exercise reasonable care while rendering medical treatment and owed a duty to follow the standard of care imposed by Illinois Law.

17. Notwithstanding said duty, LifeWeigh rendered medical treatment to Kate in a careless and negligent fashion and failed to follow the standard of care in one or more of the following respects, *inter alia:*

(A) Carelessly and negligently took an incomplete patient history of Kate;

(B) Carelessly and negligently performed an incomplete and inadequate examination on Kate;

(C) Carelessly and negligently performed incomplete and inadequate testing on Kate;

(D) Carelessly and negligently failed to have Kate's test results read or interpreted by a competent professional or specialist;

(E) Carelessly and negligently failed to review and follow the instructions of Kate's treating physicians;

(F) Carelessly and negligently failed to recognize signs and symptoms of extensive internal bleeding exhibited by Kate;

(G) Carelessly and negligently failed to timely and properly treat Kate for extensive internal bleeding or to consult with an appropriate specialist for treatment of extensive internal bleeding;

(H) Carelessly and negligently failed to provide an adequate number of appropriately trained personnel, either nurses and/or technicians, to monitor the condition of Kate;

(I) Carelessly and negligently failed to provide personnel who were adequately trained to monitor the condition of Kate;

(J) Carelessly and negligently failed, through their agents and employees, to properly monitor the condition of Kate; and/or

(K) Carelessly and negligently failed, through their agents and employees, to exercise the degree of skill and proficiency exercised by reasonably careful, skillful and prudent registered nurses, technicians or other healthcare professionals in the same class acting under the same or similar circumstances.

18. As a direct and proximate result of one or more or all of the aforesaid, wrongful acts or omissions of LifeWeigh, through its agents and/or employees, Kate sustained severe and permanent personal injuries; incurred and will incur ambulance, hospital, diagnostic, therapeutic, surgical, pharmaceutical, and other medical expenses; suffered and will suffer physical pain, mental suffering, scarring, disability, loss of enjoyment of life, lost time, lost earnings and sustained a loss of capacity to earn wages in the future and sustained other injuries and damages of a personal and pecuniary nature.

**WHEREFORE**, KATHRYN PARKER, respectfully seeks the entry of judgment in her favor and against ROSEN MEDICAL GROUP LLC a/k/a LIFEWEIGH BARIATRICS for compensatory damages in an amount to be determined herein, for the costs of this action, and for any and all other relief that the Court may deem proper under the circumstances.

## COUNT III - Allen Mikhail, M.D.

Plaintiff, KATHRYN PARKER, by her counsel, KENNETH J. ALLEN & ASSOCIATES, P.C., complaining of the Defendant, ALLEN MIKHAIL, M.D., alleges and states as follows:

8

1-7.    KATHRYN PARKER (hereinafter "Kate") incorporates by reference the allegations in paragraphs 1 through 7 of the Jurisdiction and Venue section of this Complaint.

8.    At all times relevant to this action, ALLEN MIKHAIL M.D., (hereinafter "Mikhail") was a licensed physician, surgeon and endocrinologist practicing in Indiana and Illinois.

9.    At all times relevant to this action, Mikhail provided medical treatment to Kate.

10.    At all times relevant to this action, Mikhail was an owner, agent, employee and/or had staff privileges at LifeWeigh and was acting within the scope of his employment relationship with LifeWeigh.

11.    At all times relevant to this action, Mikhail was an agent, employee and/or had staff privileges at Advocate Good Samaritan Hospital in Illinois and was acting within the scope of his employment relationship with Advocate Good Samaritan Hospital.

12.    On or about February 1, 2010, and for a period of time thereafter, Kate was admitted to Advocate Good Samaritan Hospital and was under the care of Jeffrey Rosen, M.D., Allen Mikhail, M.D., as well as the nursing staff of Advocate Good Samaritan Hospital, all of whom acted as agents and employees of Advocate Good Samaritan Hospital and were acting within the scope of their employment relationship with Advocate Good Samaritan Hospital.

13.    On or about February 1, 2010, Mikhail rendered medical treatment to Kate, and in doing so, owed Kate a duty to follow the standard of care imposed by Illinois law.

14.    Notwithstanding said duty, Mikhail rendered medical treatment upon Kate in a careless and negligent fashion and failed to follow the standard of care in one or more of the following respects, *inter alia*:

(A)    Mikhail took an incomplete patient history of Kate;

(B)    Mikhail performed an incomplete and inadequate examination on Kate;

(C)    Mikhail performed incomplete and inadequate testing on Kate;

(D)    Mikhail failed to have Kate's test results read or interpreted by a competent professional or specialist;

(E)    Mikhail failed to review and follow the instructions of Kate's other treating physicians;

(F)    Mikhail improperly performed gastric bypass surgery on Kate;

(G)    Mikhail improperly performed hernia repair surgery on Kate;

(H)    Mikhail improperly performed G-tube placement on Kate;

(I)    Mikhail improperly performed cholecystectomy on Kate;

(J)    Mikhail improperly performed adhesiolysis on Kate;

(K)    Mikhail improperly performed laparoscopy on Kate;

(L)    Mikhail improperly performed esophagogastroduodenoscopy on Kate;

(M)    Mikhail improperly monitored Kate during and after her surgery;

(N)    Mikhail failed to recognize signs and symptoms of extensive internal bleeding exhibited by Kate;

(O)    Mikhail failed to timely diagnose the presence of extensive internal bleeding in Kate;

(P)    Mikhail failed to timely and properly treat Kate for extensive internal bleeding or to consult with an appropriate specialist for treatment of extensive internal bleeding; and/or

(Q)    Mikhail failed to exercise the degree of skill and proficiency exercised by reasonably careful, skillful and prudent physicians and/or surgeons in the same class acting under the same or similar circumstances.

15.    As a direct and proximate result of Mikhail's aforesaid separate and distinct negligent acts and omissions, Kate sustained severe and permanent personal injuries; incurred and will incur ambulance, hospital, diagnostic, therapeutic, surgical, pharmaceutical, and other medical expenses; suffered and will suffer physical pain, mental suffering, scarring, disability, loss of enjoyment of life, lost time, lost earnings and sustained a loss of capacity to earn wages in the future and sustained other injuries and damages of a personal and pecuniary nature.

**WHEREFORE**, KATHRYN PARKER, respectfully seeks the entry of judgment in her favor and against ALLEN MIKHAIL, M.D. for compensatory damages in an amount to be determined herein, for the costs of this action, and for any and all other relief that the Court may deem proper under the circumstances.

## COUNT IV - Jeffrey Rosen, M.D.

Plaintiff, KATHRYN PARKER, by her counsel, KENNETH J. ALLEN & ASSOCIATES, P.C., complaining of the Defendant, JEFFREY ROSEN, M.D., alleges and states as follows:

1-7.    KATHRYN PARKER (hereinafter "Kate") incorporates by reference the allegations in paragraphs 1 through 7 of the Jurisdiction and Venue section of this Complaint.

8.    At all times relevant to this action, JEFFREY ROSEN M.D., (hereinafter "Rosen") was a licensed physician, surgeon and/or endocrinologist practicing in Indiana and Illinois.

9.    At all times relevant to this action, Rosen provided medical treatment to Kate.

10. At all times relevant to this action, Rosen was an owner, agent, employee and/or had staff privileges at LifeWeigh and was acting within the scope of his employment.

11. At all times relevant to this action, Rosen was an agent, employee and/or had staff privileges at Advocate Good Samaritan Hospital in Illinois and was acting within the scope of his employment.

12. On or about February 1, 2010, and for a period of time thereafter, Kate was admitted to Advocate Good Samaritan Hospital and was under the care of Jeffrey Rosen, M.D., Allen Mikhail, M.D., as well as the nursing staff of Advocate Good Samaritan Hospital, all of whom acted as agents and employees of Advocate Good Samaritan Hospital and were acting within the scope of their employment relationship with Advocate Good Samaritan Hospital.

13. On or about February 1, 2010, Rosen rendered medical treatment to Kate, and in doing so, owed Kate a duty to follow the standard of care imposed by Illinois law.

14. Notwithstanding said duty, Rosen rendered medical treatment upon Kate in a careless and negligent fashion and failed to follow the standard of care in one or more of the following respects, *inter alia*:

(A) Rosen took an incomplete patient history of Kate;

(B) Rosen performed an incomplete and inadequate examination on Kate;

(C) Rosen performed incomplete and inadequate testing on Kate;

(D) Rosen failed to have Kate's test results read or interpreted by a competent professional or specialist;

(E) Rosen failed to review and follow the instructions of Kate's other treating physicians;

(F) Rosen improperly performed gastric bypass surgery on Kate;

(G)     Rosen improperly performed hernia repair surgery on Kate;

(H)     Rosen improperly performed G-tube placement on Kate;

(I)     Rosen improperly performed laparoscopic cholecystectomy on Kate;

(J)     Rosen improperly performed adhesiolysis on Kate;

(K)     Rosen improperly performed laparoscopy on Kate;

(L)     Rosen improperly performed esophagogastroduodenoscopy on Kate;

(M)     Rosen improperly monitored Kate during and after her surgery;

(N)     Rosen failed to recognize signs and symptoms of extensive internal bleeding exhibited by Kate;

(O)     Rosen failed to timely diagnose the presence of extensive internal bleeding in Kate;

(P)     Rosen failed to timely and properly treat Kate for extensive internal bleeding or to consult with an appropriate specialist for treatment of extensive internal bleeding; and/or

(Q)     Rosen failed to exercise the degree of skill and proficiency exercised by reasonably careful, skillful and prudent physician and/or surgeon in the same class acting under the same or similar circumstances.

15.     As a direct and proximate result of Rosen's aforesaid separate and distinct negligent acts and omissions, Kate sustained severe and permanent personal injuries; incurred and will incur ambulance, hospital, diagnostic, therapeutic, surgical, pharmaceutical, and other medical expenses; suffered and will suffer physical pain, mental suffering, scarring, disability, loss of enjoyment of life, lost time, lost earnings and sustained a loss of capacity to earn wages in the future and sustained other injuries and damages of a personal and pecuniary nature.

**WHEREFORE**, KATHRYN PARKER, respectfully seeks the entry of judgment in her favor and against JEFFREY ROSEN, M.D. for compensatory damages in an amount to be determined herein, for the costs of this action, and for any and all other relief that the Court may deem proper under the circumstances.

### COUNT V- Consortium- Advocate Health and Hospitals Corporation

Plaintiff, PAUL PARKER, by his counsel, **KENNETH J. ALLEN & ASSOCIATES, P.C.**, complaining of the Defendant, ADVOCATE HEALTH AND HOSPITALS CORPORATION a/k/a ADVOCATE GOOD SAMARITAN HOSPITAL, alleges and states as follows:

1-7. PAUL PARKER (hereinafter "Paul") incorporates by reference the allegations in paragraphs 1 through 7 of the Jurisdiction and Venue section of this Complaint.

8. At all times relevant to this action, ADVOCATE HEALTH AND HOSPITALS CORPORATION a/k/a ADVOCATE GOOD SAMARITAN HOSPITAL (hereinafter "Hospital") owned, managed, operated, maintained and controlled a hospital facility located at the common address of 3815 Highland Avenue, Downers Grove, County of DuPage, State of Illinois.

9. At all times relevant to this action, Hospital rendered medical care and treatment to persons suffering from various conditions and ailments and that care and treatment included the ownership, management, operation, maintenance and control of a hospital and operating rooms which provided, as part of the care and treatment rendered to patients, nursing and physician care, and all of such services were provided for monetary consideration.

10. On or about February 1, 2010, and for a period of time thereafter, KATHRYN PARKER (hereinafter "Kate") was admitted to Hospital for the purpose of

receiving medical treatment, including but not limited to, undergoing gastric bypass surgery.

11.     On or about February 1, 2010, Kate was admitted to Hospital and was under the care of Jeffrey Rosen, M.D., Allen Mikhail, M.D., as well as the nursing staff of Hospital, all of whom acted as agents and employees of Hospital and were acting within the scope of their employment relationship with Hospital.

12.     That on or about February 1, 2010, and for a period of time prior thereto, Jeffrey Rosen, M.D. was a physician licensed to practice medicine in Indiana and Illinois and was on the aforesaid date, so engaged and was admitted to the staff of Hospital for the purpose of practicing his profession.

13.     That on or about February 1, 2010, and all times relevant to this action, Jeffrey Rosen,, M.D. was an employee and agent of Hospital, and was acting within the scope of his employment relationship with Hospital.

14.     That on February 1, 2011, and for a period of time prior thereto, Allen Mikhail, M.D. was a physician licensed to practice medicine in Indiana and Illinois and was on the aforesaid date, so engaged and was admitted to the staff of Hospital for the purpose of practicing his profession.

15.     That on or about February 1, 2010, and all times relevant to this action, Allen Mikhail, M.D. was an employee and agent of Hospital, and was acting within the scope of his employment relationship with Hospital.

16.     At all times relevant to this action, Hospital owed a duty to Kate and others similarly situated to exercise reasonable care while rendering medical treatment and owed a duty to follow the standard of care imposed by Illinois Law.

17.     Notwithstanding said duty, Hospital rendered medical treatment to Kate in a careless and negligent fashion and failed to follow the standard of care in one or more of the following respects, *inter alia:*

(A)     Carelessly and negligently took an incomplete patient history of Kate;

(B)     Carelessly and negligently performed an incomplete and inadequate examination on Kate;

(C)     Carelessly and negligently performed incomplete and inadequate testing on Kate;

(D)     Carelessly and negligently failed to have Kate's test results read or interpreted by a competent professional or specialist;

(E)     Carelessly and negligently failed to review and follow the instructions of Kate's treating physicians;

(F)     Carelessly and negligently failed to recognize signs and symptoms of extensive internal bleeding exhibited by Kate;

(G)     Carelessly and negligently failed to timely and properly treat Kate for extensive internal bleeding or to consult with an appropriate specialist for treatment of extensive internal bleeding;

(H)     Carelessly and negligently failed to provide an adequate number of appropriately trained personnel, either nurses and/or technicians, to monitor the condition of Kate;

(I)     Carelessly and negligently failed to provide personnel who were adequately trained to monitor the condition of Kate;

(J)     Carelessly and negligently failed, through their agents and employees, to properly monitor the condition of Kate; and/or

(K)     Carelessly and negligently failed, through their agents and employees, to exercise the degree of skill and proficiency exercised by reasonably careful, skillful and prudent registered nurses, technicians or other healthcare professionals in the same class acting under the same or similar circumstances.

18.     As a direct and proximate result of one or more or all of the aforesaid, wrongful acts or omissions of Hospital, through its agents and/or employees, Kate sustained severe and permanent personal injuries; incurred and will incur ambulance,

hospital, diagnostic, therapeutic, surgical, pharmaceutical, and other medical expenses; suffered and will suffer physical pain, mental suffering, scarring, disability, loss of enjoyment of life, lost time, lost earnings and sustained a loss of capacity to earn wages in the future and sustained other injuries and damages of a personal and pecuniary nature.

19.     At all times relevant herein, Kate and Paul were and are husband and wife.

20.     As a direct and proximate result of Hospital's negligence and Kate's proximately resulting injuries, Paul has been deprived of a portion of Kate's love, companionship, consortium, and/or other services which she had ably provided prior to February 1, 2010.

**WHEREFORE**, PAUL PARKER, respectfully seeks the entry of judgment in his favor and against ADVOCATE HEALTH AND HOSPITALS CORPORATION a/k/a ADVOCATE GOOD SAMARITAN HOSPITAL for compensatory damages in an amount to be determined herein, for the costs of this action, and for any and all other relief that the Court may deem proper under the circumstances.

## COUNT VI – Consortium - Rosen Medical Group LLC a/k/a LifeWeigh Bariatrics

Plaintiff, PAUL PARKER, by his counsel, KENNETH J. ALLEN & ASSOCIATES, P.C., complaining of the Defendant, ROSEN MEDICAL GROUP LLC a/k/a LIFEWEIGH BARIATRICS, alleges and states as follows:

1-7.     PAUL PARKER (hereinafter "Paul") incorporates by reference the allegations in paragraphs 1 through 7 of the Jurisdiction and Venue section of this Complaint.

8.     At all times relevant to this action, , ROSEN MEDICAL GROUP LLC a/k/a LIFEWEIGH BARIATRICS (hereinafter "LifeWeigh") owned, managed, operated,

maintained and controlled a medical facility located at the common address of 2801 Finley Road, Downers Grove, Illinois.

9.     At all times relevant to this action, LifeWeigh rendered medical care and treatment to persons suffering from various conditions and ailments and that care and treatment included the ownership, management, operation, maintenance and control of a medical facility which provided, as part of the care and treatment rendered to patients, nursing and physician care, and all of such services were provided for monetary consideration.

10.     On or about February 1, 2010, and for a period of time thereafter, KATHRYN PARKER (hereinafter "Kate") was a patient of LifeWeigh for the purpose of receiving medical treatment, including but not limited to, undergoing gastric bypass surgery.

11.     On or about February 1, 2010, Kate was a patient of LifeWeigh and was under the care of Jeffrey Rosen, M.D., Allen Mikhail, M.D., as well as the nursing and support staff of LifeWeigh, all of whom acted as agents and employees of LifeWeigh and were acting within the scope of their employment relationship with LifeWeigh.

12.     That on or about February 1, 2010, and for a period of time prior thereto, Jeffrey Rosen, M.D. was a physician licensed to practice medicine in Indiana and Illinois and was on the aforesaid date, so engaged and was admitted to the staff of LifeWeigh for the purpose of practicing his profession.

13.     That on or about February 1, 2010, and all times relevant to this action, Jeffrey Rosen, M.D. was an owner, employee and agent of LifeWeigh, and was acting within the scope of his employment relationship with LifeWeigh.

14.     That on February 1, 2010, and for a period of time prior thereto, Allen Mikhail, M.D. was a physician licensed to practice medicine in Indiana and Illinois and was on the aforesaid date, so engaged and was admitted to the staff of LifeWeigh for the purpose of practicing his profession.

15.    That on or about February 1, 2010, and all times relevant to this action, Allen Mikhail, M.D. was an owner, employee and agent of LifeWeigh, and was acting within the scope of his employment relationship with LifeWeigh.

16.    At all times relevant to this action, LifeWeigh owed a duty to Kate and others similarly situated to exercise reasonable care while rendering medical treatment and owed a duty to follow the standard of care imposed by Illinois Law.

17.    Notwithstanding said duty, LifeWeigh rendered medical treatment to Kate in a careless and negligent fashion and failed to follow the standard of care in one or more of the following respects, *inter alia:*

(A)    Carelessly and negligently took an incomplete patient history of Kate;

(B)    Carelessly and negligently performed an incomplete and inadequate examination on Kate;

(C)    Carelessly and negligently performed incomplete and inadequate testing on Kate;

(D)    Carelessly and negligently failed to have Kate's test results read or interpreted by a competent professional or specialist;

(E)    Carelessly and negligently failed to review and follow the instructions of Kate's treating physicians;

(F)    Carelessly and negligently failed to recognize signs and symptoms of extensive internal bleeding exhibited by Kate;

(G)    Carelessly and negligently failed to timely and properly treat Kate for extensive internal bleeding or to consult with an appropriate specialist for treatment of extensive internal bleeding;

(H)    Carelessly and negligently failed to provide an adequate number of appropriately trained personnel, either nurses and/or technicians, to monitor the condition of Kate;

(I)     Carelessly and negligently failed to provide personnel who were adequately trained to monitor the condition of Kate;

(J)     Carelessly and negligently failed, through their agents and employees, to properly monitor the condition of Kate; and/or

(K)     Carelessly and negligently failed, through their agents and employees, to exercise the degree of skill and proficiency exercised by reasonably careful, skillful and prudent registered nurses, technicians or other healthcare professionals in the same class acting under the same or similar circumstances.

18.     As a direct and proximate result of one or more or all of the aforesaid, wrongful acts or omissions of LifeWeigh, through its agents and/or employees, Kate sustained severe and permanent personal injuries; incurred and will incur ambulance, hospital, diagnostic, therapeutic, surgical, pharmaceutical, and other medical expenses; suffered and will suffer physical pain, mental suffering, scarring, disability, loss of enjoyment of life, lost time, lost earnings and sustained a loss of capacity to earn wages in the future and sustained other injuries and damages of a personal and pecuniary nature.

19.     At all times relevant herein, Kate and Paul were and are husband and wife.

20.     As a direct and proximate result of LifeWeigh's negligence and Kate's proximately resulting injuries, Paul has been deprived of a portion of Kate's love, companionship, consortium, and/or other services which she had ably provided prior to February 1, 2010.

**WHEREFORE**, PAULPARKER, respectfully seeks the entry of judgment in his favor and against ROSEN MEDICAL GROUP LLC a/k/a LIFEWEIGH BARIATRICS for compensatory damages in an amount to be determined herein, for the costs of this action, and for any and all other relief that the Court may deem proper under the circumstances.

### COUNT VII - Consortium - Allen Mikhail, M.D.

Plaintiff, PAUL PARKER, by his counsel, KENNETH J. ALLEN & ASSOCIATES, P.C., complaining of the Defendant, ALLEN MIKHAIL, M.D., alleges and states as follows:

1-7.     PAUL PARKER (hereinafter "Paul") incorporates by reference the allegations in paragraphs 1 through 7 of the Jurisdiction and Venue section of this Complaint.

8.     At all times relevant to this action, ALLEN MIKHAIL M.D., (hereinafter "Mikhail") was a licensed physician, surgeon and endocrinologist practicing in Indiana and Illinois.

9.     At all times relevant to this action, Mikhail provided medical treatment to KATHRYN PARKER (hereinafter "Kate").

10.     At all times relevant to this action, Mikhail was an owner, agent, employee and/or had staff privileges at LifeWeigh and was acting within the scope of his employment relationship with LifeWeigh.

11.     At all times relevant to this action, Mikhail was an agent, employee and/or had staff privileges at Advocate Good Samaritan Hospital in Illinois and was acting within the scope of his employment relationship with Advocate Good Samaritan Hospital.

12.     On or about February 1, 2010, and for a period of time thereafter, Kate was admitted to Advocate Good Samaritan Hospital and was under the care of Jeffrey Rosen, M.D., Allen Mikhail, M.D., as well as the nursing staff of Advocate Good Samaritan Hospital, all of whom acted as agents and employees of Advocate Good Samaritan Hospital and were acting within the scope of their employment relationship with Advocate Good Samaritan Hospital.

13.     On or about February 1, 2010, Mikhail rendered medical treatment to Kate, and in doing so, owed Kate a duty to follow the standard of care imposed by Illinois law.

14.     Notwithstanding said duty, Mikhail rendered medical treatment upon Kate in a careless and negligent fashion and failed to follow the standard of care in one or more of the following respects, *inter alia*:

(A)     Mikhail took an incomplete patient history of Kate;

(B)     Mikhail performed an incomplete and inadequate examination on Kate;

(C)     Mikhail performed incomplete and inadequate testing on Kate;

(D)     Mikhail failed to have Kate's test results read or interpreted by a competent professional or specialist;

(E)     Mikhail failed to review and follow the instructions of Kate's other treating physicians;

(F)     Mikhail improperly performed gastric bypass surgery on Kate;

(G)     Mikhail improperly performed hernia repair surgery on Kate;

(H)     Mikhail improperly performed G-tube placement on Kate;

(I)     Mikhail improperly performed laparoscopic cholecystectomy on Kate;

(J)     Mikhail improperly performed adhesiolysis on Kate;

(K)     Mikhail improperly performed laparoscopy on Kate;

(L)     Mikhail improperly performed esophagogastroduodenoscopy on Kate;

(M)     Mikhail improperly monitored Kate during and after her surgery;

(N)     Mikhail failed to recognize signs and symptoms of extensive internal bleeding exhibited by Kate;

(O)     Mikhail failed to timely diagnose the presence of extensive internal bleeding in Kate;

(P)     Mikhail failed to timely and properly treat Kate for extensive internal bleeding or to consult with an appropriate specialist for treatment of extensive internal bleeding; and/or

(Q)     Mikhail failed to exercise the degree of skill and proficiency exercised by reasonably careful, skillful and prudent physicians and/or surgeons in the same class acting under the same or similar circumstances.

15.     As a direct and proximate result of Mikhail's aforesaid separate and distinct negligent acts and omissions, Kate sustained severe and permanent personal injuries; incurred and will incur ambulance, hospital, diagnostic, therapeutic, surgical, pharmaceutical, and other medical expenses; suffered and will suffer physical pain, mental suffering, scarring, disability, loss of enjoyment of life, lost time, lost earnings and sustained a loss of capacity to earn wages in the future and sustained other injuries and damages of a personal and pecuniary nature.

16.     At all times relevant herein, Kate and Paul were and are husband and wife.

17.     As a direct and proximate result of Mikhail's negligence and Kate's proximately resulting injuries, Paul has been deprived of a portion of Kate's love, companionship, consortium, and/or other services which she had ably provided prior to February 1, 2010.

**WHEREFORE**, PAUL PARKER, respectfully seeks the entry of judgment in his favor and against ALLEN MIKHAIL, M.D. for compensatory damages in an amount to be determined herein, for the costs of this action, and for any and all other relief that the Court may deem proper under the circumstances.

## COUNT VIII - Consortium - Jeffrey Rosen, M.D.

Plaintiff, PAUL PARKER, by her counsel, KENNETH J. ALLEN & ASSOCIATES, P.C., complaining of the Defendant, JEFFREY ROSEN, M.D., alleges and states as follows:

1-7.    PAUL PARKER (hereinafter "Paul") incorporates by reference the allegations in paragraphs 1 through 7 of the Jurisdiction and Venue section of this Complaint.

8.    At all times relevant to this action, JEFFREY ROSEN M.D., (hereinafter "Rosen") was a licensed physician, surgeon and/or endocrinologist practicing in Indiana and Illinois.

9.    At all times relevant to this action, Rosen provided medical treatment to KATHRYN PARKER (hereinafter "Kate").

10.    At all times relevant to this action, Rosen was an owner, agent, employee and/or had staff privileges at LifeWeigh and was acting within the scope of his employment.

11.    At all times relevant to this action, Rosen was an agent, employee and/or had staff privileges at Advocate Good Samaritan Hospital in Illinois and was acting within the scope of his employment.

12.    On or about February 1, 2010, Kate was admitted to Advocate Good Samaritan Hospital and was under the care of Jeffrey Rosen, M.D., Allen Mikhail, M.D., as well as the nursing staff of Advocate Good Samaritan Hospital, all of whom acted as agents and employees of Advocate Good Samaritan Hospital and were acting within the scope of their employment relationship with Advocate Good Samaritan Hospital.

13.    On or about February 1, 2010, Rosen rendered medical treatment to Kate, and in doing so, owed Kate a duty to follow the standard of care imposed by Illinois law.

14.    Notwithstanding said duty, Rosen rendered medical treatment upon Kate in a careless and negligent fashion and failed to follow the standard of care in one or more of the following respects, *inter alia*:

(A)    Rosen took an incomplete patient history of Kate;

(B)     Rosen performed an incomplete and inadequate examination on Kate;

(C)     Rosen performed incomplete and inadequate testing on Kate;

(D)     Rosen failed to have Kate's test results read or interpreted by a competent professional or specialist;

(E)     Rosen failed to review and follow the instructions of Kate's other treating physicians;

(F)     Rosen improperly performed gastric bypass surgery on Kate;

(G)     Rosen improperly performed hernia repair surgery on Kate;

(H)     Rosen improperly performed G-tube placement on Kate;

(I)     Rosen improperly performed laparoscopic cholecystectomy on Kate;

(J)     Rosen improperly performed adhesiolysis on Kate;

(K)     Rosen improperly performed laparoscopy on Kate;

(L)     Rosen improperly performed esophagogastroduodenoscopy on Kate;

(M)     Rosen improperly monitored Kate during and after her surgery;

(N)     Rosen failed to recognize signs and symptoms of extensive internal bleeding exhibited by Kate;

(O)     Rosen failed to timely diagnose the presence of extensive internal bleeding in Kate;

(P)     Rosen failed to timely and properly treat Kate for extensive internal bleeding or to consult with an appropriate specialist for treatment of extensive internal bleeding; and/or

(Q)     Rosen failed to exercise the degree of skill and proficiency exercised by reasonably careful, skillful and prudent physician and/or surgeon in the same class acting under the same or similar circumstances.

15.     As a direct and proximate result of Rosen's aforesaid separate and distinct negligent acts and omissions, Kate sustained severe and permanent personal injuries; incurred and will incur ambulance, hospital, diagnostic, therapeutic, surgical, pharmaceutical, and other medical expenses; suffered and will suffer physical pain, mental suffering, scarring, disability, loss of enjoyment of life, lost time, lost earnings and sustained a loss of capacity to earn wages in the future and sustained other injuries and damages of a personal and pecuniary nature.

16.     At all times relevant herein, Kate and Paul were and are husband and wife.

17.     As a direct and proximate result of Hospital's negligence and Kate's proximately resulting injuries, Paul has been deprived of a portion of Kate's love, companionship, consortium, and/or other services which she had ably provided prior to February 1, 2010.

**WHEREFORE**, PAUL PARKER, respectfully seeks the entry of judgment in his favor and against JEFFREY ROSEN, M.D. for compensatory damages in an amount to be determined herein, for the costs of this action, and for any and all other relief that the Court may deem proper under the circumstances.

Respectfully submitted,

KENNETH J. ALLEN & ASSOCIATES, P.C.
Attorneys for Plaintiff

Kenneth J. Allen
Joseph A. Panatera

## JURY DEMAND

Plaintiffs demand trial by jury on all Counts of their Complaint.

Respectfully submitted,

**KENNETH J. ALLEN & ASSOCIATES, P.C.**
Attorneys for Plaintiffs

Kenneth J. Allen
Joseph A. Panatera



*Refer to Office Indicated*

⊠   ALLEN LAW BUILDING    □   JUSTICE CENTER    □   SMURFIT-STONE BUILDING    ALL OFFICES
1109 Glendale Boulevard    3700 East US 30    150 North Michigan Ave.    Facsimile
Valparaiso, IN 46383    Merrillville, IN 46410    Chicago, IL 60601    219.477.5181
219.465.6292    219.736.6292    312.236.6292    KENALLENLAW.COM