**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| NINA FORSYTHE as guardian of, ) <br> KATHRYN PARKER and PAUL PARKER, ) <br> individually, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> ADVOCATE HEALTH AND HOSPITALS ) <br> CORPORATION d/b/a ADVOCATE GOOD ) <br> SAMARITAN HOSPITAL, ) <br> ROSEN MEDICAL GROUP, LLC, a/k/a ) <br> LIFEWEIGH BARIATRICS, ) <br> ALLEN MIKHAIL, M.D., and ) <br> JEFFREY ROSEN, M.D., ) <br> ) <br> Defendants. ) | Case No. 11 C 7676 |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

On October 27, 2011, Nina Forsythe, the guardian of Kathryn Parker ("Kathryn") and Paul Parker (collectively, "Plaintiffs") filed an eight-count complaint (the "Complaint") against Defendants Advocate Health and Hospitals Corporation ("Advocate"), Rosen Medical Group LLC ("LifeWeigh"), Dr. Allen Mikhail, and Dr. Jeffrey Rosen (collectively, "Defendants") alleging malpractice and loss of consortium stemming from Kathryn's admission to the hospital on February 1, 2010 and her subsequent gastric bypass surgery. (R. 1, Compl.) Plaintiffs filed an amended eight-count complaint on January 26, 2012 (the "FAC"). (R. 30, FAC.) In open court, during a status hearing on November 29, 2012, Plaintiffs sought leave to file a second amended complaint to clarify their claims. The Court granted Plaintiffs leave to file, informing Defendants that they could address any concerns after Plaintiffs filed the second amended

complaint. (R. 59.) Plaintiffs filed their Second Amended Complaint ("SAC") on December 6, 2012, which, according to Plaintiffs, "identified additional Advocate physicians and nurses who were negligent during the critical, post-operative period." (R. 69, Resp. at 2; R. 60, SAC.) Defendants contend that Plaintiffs added new allegations and theories of liability in the SAC, which did not previously appear in the Complaint or the FAC, in violation of the two-year statute of limitations for medical malpractice claims. Specifically, Advocate moves to dismiss Counts I and V of Plaintiff's SAC pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (R. 61, Mot. to Dis.) The other Defendants move to strike allegations (Q) and (R) in Count II of the SAC, and (W) and (X) in Counts III and IV.[1] (R. 64, Mot. to Str.) The Court addresses these motions together as they challenge the SAC on the same grounds. For the following reasons, the Court denies Defendants' motions without prejudice.

## BACKGROUND

Plaintiffs allege the following facts, which the Court deems true for purposes of this motion.[2]

---

[1] Although Defendants Rosen, Mikhail and LifeWeigh describe their motion as a motion to strike, the Court treats the motion as a motion to dismiss because the timeliness arguments better fit the mold of a motion to dismiss than a motion to strike. Specifically, Defendants did not argue that the allegations at issue are " immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f); *see also Delta Consulting Group, Inc. v. R. Randle Const., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009). Treating Defendant's motion as a motion to dismiss does not, however, materially alter the analysis and does not change the Court's outcome.

[2] In addition to considering allegations contained in Plaintiffs' SAC, the Court considered the context and detail provided in Plaintiffs' response brief. *See, e.g., Billington v. Village of Armington, Ill.*, No. 10-3876, 2012 WL 4857560, at *4 (7th Cir. Oct. 15, 2012) (noting that "a plaintiff has significant flexibility in responding to a motion to dismiss, and may elaborate on the factual allegations of the complaint or submit materials outside the pleadings in order to illustrate the facts that the plaintiff expects to develop for trial"). The Court also considered the Section 2-622 reports attached to the SAC. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that

On or about February 1, 2010, Kathryn was admitted to Advocate to undergo gastric bypass surgery. (SAC Count I ¶ 11-12.) In February 2010, Dr. Jeffrey Rosen, Dr. Allen Mikhail, Dr. Samir Kumar, Dr. Arun Kumar, and Dr. John David Porcelli were licensed physicians engaged by Advocate to practice medicine at Advocate. (*Id*. Count I ¶¶ 13-22.) Dr. Rosen and Dr. Mikhail were also owners, agents, employees and/or had staff privileges at LifeWeigh, another medical facility where Kathryn received treatment in February 2010 in connection with her admission to Advocate. (*Id*. Count III ¶ 11; Count IV ¶ 11.)

While at Advocate, Dr. Mikhail and Dr. Rosen performed numerous procedures on Kathryn, including gastric bypass surgery and hernia repair surgery. (*Id*. Count III ¶ 15 (J)-(P); Count IV ¶ 15 (J)-(P).) As part of or as a result of the procedures, Kathryn experienced extensive internal bleeding, which Dr. Mikhail and Dr. Rosen failed to timely diagnose and treat. (*Id*. Count I, ¶ 24(J)-(K); Count II ¶ 18(J)-(K); Count III ¶ 15(S)-(U); Count IV ¶ 15(S)-(U).) Defendants also carelessly and negligently prescribed and/or administered anti-coagulation medication to Kathryn. (*Id*. Count I ¶ 24(O); Count II ¶ 18(O).) The internal bleeding "in turn, caused organ dysfunction including respiratory and kidney problems." (Resp. at 4.) "Due to complications with [her] kidney dysfunction, her potassium levels increased to dangerously high levels – a condition known as hyperkalemia." (*Id.*) Additionally, on February 27, 2010, Defendants, including Dr. Mikhail and Dr. Rosen, failed to have a plan to treat Kathryn's hyperkalemia. (*Id*. Count I ¶ 24(Q); Count II ¶ 18(Q); Count III ¶ 15(W); Count IV ¶ 15(W).)

---

is an exhibit to a pleading is a part of the pleading for all purposes."); *see also Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) ("Because the letter was attached to the complaint, it became a part of it for all purposes, and so the judge could consider it in deciding the motion to dismiss without having to convert the motion to one for summary judgment.") (internal citations omitted).

Defendants also failed to timely treat Kathryn's hyperkalemia by ordering Kayexalate or renal dialysis. (*Id*. Count I ¶ 24(R); Count II ¶ 18(R); Count III ¶ 15(X); Count IV ¶ 15(X).) Finally, Advocate, by and through its agents, failed to timely defibrillate Kathryn during an episode of cardiac arrest on December 28, 2010. (*Id*. Count I ¶ 24 (U).) ) Because of these actions or omissions by Advocate, Kathryn sustained severe and permanent personal injuries. (*See, e.g.,* SAC Count I ¶ 25.) Kathryn, for example, sustained "an anoxic brain injury and resulting paralysis" because she experienced a prolonged period without oxygen, due to Defendants' failures. (Resp. at 4.) Her injuries have deprived her husband of a portion of Kathryn's "love, companionship, consortium and/or other services which she had ably provided prior to February 1, 2010." (*See, e.g.,* SAC Count V ¶ 21.)

In anticipation of this litigation, and as required by 735 ILCS 5/2-622, Dr. Joseph A. Panatera ("Dr. Panatera"), a licensed physician and surgeon, reviewed the medical records relating to Defendants' care and treatment of Kathryn. (R. 60-2, Ex. B.) On January 24, 2012, Dr. Panatera concluded that Kathryn had "reasonable and meritorious cause" for filing this lawsuit against Defendants. (*Id*.) Plaintiffs attached Dr. Pantera's findings to the Complaint and the FAC. (*See* R. 1, Ex. 1; R. 30, Ex. 1.) At some point later, Dr. Francis P. Morrisey ("Dr. Morrisey"), a licensed physician, reviewed the relevant medical records as well as the Kathryn's deposition testimony. (R. 60-2, SAC Ex. B) In October 2012, Dr. Morrissey concluded that there is a "reasonable and meritorious basis for bringing a cause of action" against Dr. Samir Kumar, Dr. Amir Kumar, Dr. John Porcelli, Dr. Rosen, and Advocate because they deviated from the required standard of care in their treatment of Kathryn regarding her hyperkalemia. (*Id*.) Dr. Morrisey also concluded that there is a "reasonable and meritorious basis for bringing a

cause of action" against Advocate for is failure to timely defibrillate Kathryn during her December 28, 2010 cardiac arrest. Plaintiffs attached Dr. Morrisey's conclusions to the SAC, along with Dr. Panatera's findings. (*Id.*)

## LEGAL STANDARD

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). "In evaluating the sufficiency of the complaint, [courts] view it in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). A plaintiff may plead himself out of court by alleging facts showing that he has no legal claim. *See Peterson v. McGladrey & Pullen, LLP*, 676 F.3d 594, 600 (7th Cir. 2012); *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011).

## ANALYSIS

Defendants argue that the Court should dismiss or strike as untimely the new allegations Plaintiffs added in the SAC. The SAC alleges that Defendants began treating Kathryn on February 1, 2010 and references specific medical events that occurred on February 27, 2010 and February 28, 2010.[3] Defendants contend, therefore, that the statute of limitations period for the alleged malpractice ended in February 2012, two years after the alleged conduct occurred. *See* 735 ILCS 5/13-212(a) (stating that a malpractice action has a two year statute of limitations). Plaintiffs filed the SAC on December 6, 2012. Plaintiffs argue that the allegations in the SAC are not untimely as they merely amplify the allegations in the Complaint and the FAC and relate back to the occurrences alleged in those timely-filed pleadings. (Resp. at 2; *see also Marshall v. H & R Block Tax Servs., Inc.,* 564 F.3d 826, 829 (7th Cir. 2009) (stating that, under federal and Illinois law alike, "the criterion of relation back is whether the original complaint gave the defendant enough notice of the nature and scope of the plaintiff"s claim that he shouldn't have been surprised by the amplification of the allegations of the original complaint in the amended one.").

"While a statute of limitations defense is not normally part of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), when the allegations of the complaint reveal that relief

---

[3] The SAC refers to a failure to timely defibrillate Kathryn during cardiac arrest on December 28, 2010. (SAC Count I ¶ 24(U).) This date appears to be a typographical error as Dr. Morrissey reviewed records of Kathryn's admission to Advocate, beginning on February 1, 2010 through her release on March 18, 2010. (*Id.* Ex. B.) Moreover, Defendants refer to this cardiac event as occurring on February 28, 2010, consistent with these records. (*See, e.g.,* Mot. at 1.) For purposes of this motion, the Court assumes that the cardiac arrest occurred on February 28, 2010, during Kathryn's admission to Advocate, although this date does not affect the Court's outcome. Moreover, if the cardiac arrest occurred on December 28, 2010, then Defendants' statute of limitations defense would be moot.

is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim." *Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011) (citing *Andonissamy v. Hewlett-Packard Co.,* 547 F.3d 841, 847 (7th Cir. 2008)); *see also Brownmark Films, LLC v. Comedy Partners,* 682 F.3d 687, 690 (7th Cir. 2012) (noting that courts should usually refrain from granting Rule 12(b)(6) motions on affirmative defenses because such defenses "typically turn on facts not before the court at that stage in the proceedings"); *see also Hollander v. Brown*, 457 F.3d 688, 691 n. 1 (7th Cir. 2006) (observing that it is "irregular" to dismiss a complaint on the basis of an affirmative defense such as the statute of limitations, unless "the plaintiff effectively pleads herself out of court by alleging facts that are sufficient to establish the defense"). Here, the SAC does not clearly reveal that the new allegations in the SAC are sufficiently separate and distinct that they should not relate back, for statute of limitations purposes, to the allegations in the Complaint and FAC. Rather, making all inferences in Plaintiffs' favor, the SAC sufficiently alleges new facts that may have been part of the same transaction and occurrence described in the Complaint and FAC.

  Although the parties agree that Illinois law governs the relevant statute of limitations period, the parties cite to both the Illinois and Federal laws governing relation back. The Seventh Circuit has recognized, however, "that Illinois' relation-back doctrine is, in all material respects, identical to the federal rule." *In re Safeco Ins. Co. of Am.*, 585 F.3d 326, 331 (7th Cir. 2009) (citing *Marshall,* 564 F.3d at 829; *Springman v. AIG Mktg., Inc*., 523 F.3d 685, 688 (7th Cir. 2008)). Indeed, the Notes of the Advisory Committee on Rules for the 1991 Amendment to Rule 15 state that if the state law which governs the limitations period "affords a more forgiving principle of relation back than the one provided in this rule, it should be available to save the

claim." The parties reliance on both Illinois and federal relation back cases is therefore not misguided. *See Diaz v. Shallbetter*, 984 F.2d 850, 853-54 (7th Cir. 1993) ("Rule 15(c) is part of federal law, and its meaning is a federal question. But when trying to determine whether 'relation back' is essential to make the complaint timely, we must refer to the law defining the period of limitations."); *Arendt v. Vetta Sports, Inc.*, 99 F.3d 231, 236 n. 3 (7th Cir. 1996) (finding that an amended complaint filed in an diversity action arising under Illinois law is "timely under Rule 15(c)(1) if it meets the requirements of either federal or Illinois law").

"Under Illinois law as under federal law, an amendment relates back when it arises out of the same transaction or occurrence set up in the original pleading." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 515 (7th Cir. 2011) (quoting *Phillips v. Ford Motor Co.*, 435 F.3d 785, 788 (7th Cir. 2006)); *see also* Fed. R. Civ. P (15)(c)(1)(B); *Porter v. Decatur Mem'l. Hosp.*, 227 Ill.2d 343, 317 Ill. Dec. 703, 882 N.E.2d 583, 591-93 (Ill. 2008)); *see also White v. City of Chicago,* 631 F.Supp.2d 1073, 1074 (N.D. Ill. 2009) (stating that Section 2-616(b) is Illinois' "relation-back provision that codifies essentially the same test as Rule 15(c) in the federal context"). Specifically, the Seventh Circuit has held that "Rule 15(c) permits relation back where the claims in an amended pleading are based on the same core of facts advanced in the original." *Newell v. Hanks,* 283 F.3d 827, 834 (7th Cir. 2002). According to the Illinois Supreme Court, a court should evaluate three factors when determining whether an amendment relates back: (1) whether the original and amended set of facts are separated by a significant lapse of time; (2) whether the two sets of facts are different in character; or (3) whether the two sets of facts lead to arguably different injuries. *Porter,* 227 Ill. 2d at 358-59 (citing *In re Olympia Brewing Co. Sec. Litig.*, 612 F. Supp. 1370, 1371-72 (N.D. Ill. 1985)). As a result,

under either Illinois or federal law, the Court must compare the facts underlying the initial allegations and the new allegations to determine if they arise out of the same transaction or occurrence, and therefore warrant relation back.

According to Defendants, in the SAC, Plaintiffs added reference to multiple new sources of vicarious liability, namely relating to Dr. Samir Kumar, Dr. Arun Kumar, Dr. David Porcelli, and unnamed nurses, and adding five new allegations of negligence relating to care Kathryn received at the end of February. (SAC Count I ¶¶ 17-22, 24; Mot. at 6.) Those new allegations state that Defendants:

> (Q) Failed to have a plan to treat Kate's hyperkalemia on 2/27/10;
>
> (R) Failed to timely treat Kate's hyperkalemia by ordering Kayexalate or renal dialysis;
>
> (S) Failed to properly institute nursing interventions and notify the patient's physician of the patient's persistent hyperkalemia and overall worsening condition;
>
> (T) Failed to execute care by not updating the involved physicians on the increasing potassium level; and/or
>
> (U) Failed to timely defibrillate Kate during the 12/28/10 cardiac arrest.

(*Id.* Count I ¶ 24(Q)-(U).) In support of these allegations, Plaintiffs also filed five new Section 2-622 reports by Dr. Morrisey. (*Id.* Ex. B.) Notably, Plaintiffs did not add these additional allegations when they filed the FAC. Rather, the FAC changed the caption by adding Nina Forsyth as the nominal plaintiff and guardian of Kathryn, and added five new allegations of negligence relating to informed consent. (Mot. at 5.)

Defendants argue that these new allegations relate to different medical procedures, treatments, physicians, and nurses than the initial allegations that focused on the gastric bypass

9

surgery, and therefore were not part of the same occurrence. (*See, e.g.,* Mot. at 8; R. 72, Reply at 8.) Indeed, the Complaint and FAC "made absolutely no mention of the many surgeries or diagnostic studies Kathryn underwent, the treatment she received, or the many doctors that cared for her *after* February 1, 2010." (Mot. at 4.) Specifically, the Complaint and FAC did not reference hyperkalemia, defibrillation, or any cardiac arrest. Also, Dr. Panatera's Section 2-622 report, attached to the Complaint and the FAC, only describes treatment and care that Kathryn received on February 1, 2010 and February 2, 2010, even though Panatera reviewed hospital records through March 2, 2010. (SAC Ex. B.) Defendants argue, therefore, that the Complaint and the FAC did not give them sufficient notice of the additional allegations in the SAC regarding medical treatment and complications that occurred weeks later.

When the Court makes all reasonable inferences in Plaintiffs' favor, however, Plaintiffs have sufficiently alleged that the new allegations relate back the Complaint and the FAC. Specifically, the SAC contains a list of alleged negligent acts by Defendants and their agents that occurred during Kathryn's admission to the hospital for gastric bypass surgery. (SAC ¶ 24.) The majority of these allegations, specifically allegations (A)-(R), also appeared in the FAC and the Complaint. (*Id*.) The material difference between the FAC and the SAC is that while the FAC includes allegations of certain post-operative complications, the SAC includes the new allegations of additional complications which Kathryn endured prior to her release from Advocate. (Resp. at 2-4.) Plaintiffs explain the connection between the originally pled complications and those included for the first time in the SAC. (*Id*. at 4.) Specifically, Plaintiffs describe a chain of events beginning with the internal bleeding Kathryn suffered shortly after the gastric bypass surgery and continuing through the cardiac arrest that occurred near the end of her

10

hospital stay. (*Id*. at 4.)  Based on the allegations, viewed in the light most favorable to Plaintiffs for purposes of this motion, Plaintiffs have sufficiently pled that the new allegations were part of the same transaction or occurrence as the allegations in the Complaint and FAC.[4] At a different stage of litigation, Defendants may be able to establish that the new allegations in the SAC are independent events separate from the occurrences pled in the Complaint and FAC.[5] Plaintiffs have, however, sufficiently pled facts to support relation-back to the timely-filed Complaint and FAC in order to survive a motion to dismiss based on a statute of limitations defense.

## CONCLUSION

For the foregoing reasons, the Court denies Advocate's motion to dismiss and the other Defendants' motion to strike, without prejudice.

**DATED: February 1, 2013**

ENTERED

*[signature]*

**AMY J. ST. EVE**
**United States District Court Judge**

---

[4] Notably, a motion to dismiss under Illinois law expressly permits dismissal on statute of limitations grounds.  *See* 735 ILCS 5/2-619.  As a result, even though Illinois courts may apply materially identical relation-back law, the timing and manner in which Illinois courts address relation-back arguments may differ from similar issues presented in a federal case.

[5] Nothing in this opinion precludes Defendants from pursuing any affirmative defenses, including statute of limitations, in any later stage of these proceedings.