**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| NINA FORSYTHE, as Guardian of KATHRYN PARKER, a Disabled Person, ) ) Plaintiff, ) ) v. ) ) ROSEN MEDICAL GROUP, LLC d/b/a ) LIFEWEIGH BARIATRICS; ) ALLEN MIKHAIL, M.D.; and, ) JEFFREY ROSEN, M.D., ) ) Defendants. ) | Case No.: 11-cv-07676 Judge Amy J. St. Eve |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On September 16, 2013, Nina Forsythe, the guardian of Kathryn Parker ("Plaintiff"), filed a five-count Third Amended Complaint[1] (the "Complaint"). (R. 99.) Plaintiff later settled her claims against Defendant Advocate Health and Hospital Corporation d/b/a Advocate Good Samaritan Hospital (the "Hospital"), and dismissed her claims against it with prejudice. (R. 108.) The remaining defendants are Rosen Medical Group, LLC, d/b/a Lifeweigh Bariatrics; Allen Mikhail, M.D.; and Jeffrey Rosen, M.D. (collectively, "Defendants"). In the Complaint, Plaintiff alleges negligence by the Defendants following the Hospital's admission of Ms. Parker on February 1, 2010 and her subsequent gastric bypass surgery. Before the Court are Defendants' motions in limine to bar certain portions of the testimony of Ms. Parker's life care planner, Dr. Gary Yarkony, and to prevent Plaintiff's experts from referring to either of the

---

[1] Plaintiff filed her original Complaint on October 27, 2011, and her First Amended Complaint on January 26, 2012. (R. 1, Compl.); (R. 30, Am. Compl.) Plaintiff filed her Second Amended Complaint on December 6, 2012. (R. 60, Sec. Am. Compl.) Defendants filed a motion to dismiss certain counts of the Second Amended Complaint, which the Court denied without prejudice. (R. 74, Feb. 1, 2013 Order.)

individual Defendants as the "captain of the ship." Also before the Court are Plaintiffs' motions in limine to bar testimony from two of Defendants' surgical experts as cumulative, and to prevent the introduction of surgical expert testimony from Ms. Parker's treating hematologist (blood doctor). For the following reasons, the Court grants in part and denies in part Defendants' motions, and grants in part and denies in part Plaintiff's motions.

## BACKGROUND

Plaintiff alleges the following facts. On February 1, 2010, the Hospital admitted Ms. Parker to undergo gastric bypass surgery. While at the Hospital, Dr. Mikhail and Dr. Rosen performed numerous procedures on Ms. Parker, including gastric bypass surgery and hernia repair surgery. As a part of or as a result of the procedures, Ms. Parker experienced extensive internal bleeding, which Dr. Mikhail and Dr. Rosen failed to timely diagnose and treat. Plaintiff further claims that Defendants carelessly and negligently prescribed and/or administered anticoagulation medication to Ms. Parker. The internal bleeding, in turn, caused organ dysfunction including respiratory and kidney problems. She then developed dangerously high potassium levels, which led to an anoxic brain injury and resulting paralysis after Defendants failed to timely treat her condition. Based on these allegations, Plaintiff brings a negligence action against Defendants.

## LEGAL STANDARD

Trial courts have broad discretion in ruling on evidentiary issues before and during trial. *See Whitfield v. Int'l Truck & Engine Corp.,* 755 F.3d 438, 447 (7th Cir. 2014); *Manez v. Bridgestone Firestone N. Am. Tire, LLC,* 533 F.3d 578, 593 (7th Cir. 2008). "Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce*

*v. United States,* 469 U.S. 38, 41 n.4, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984). "Trial courts issue rulings on motions in limine to guide the parties on what evidence it will admit later in trial," and "[a]s a trial progresses, the presiding judge remains free to alter earlier rulings." *Perry v. City of Chicago,* 733 F.3d 248, 252 (7th Cir. 2013). An in limine ruling avoids delays and allows the parties an opportunity to prepare themselves and witnesses for the introduction or exclusion of the evidence at issue. *See Wilson v. Williams,* 182 F.3d 562, 566 (7th Cir. 1999) (en banc); *see also Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997) ("The prudent use of the in limine motion sharpens the focus of later trial proceedings and permits the parties to focus their preparation on those matters that will be considered by the jury."). Ultimately, an in limine motion "performs a gatekeeping function and permits the trial judge to eliminate from further consideration evidentiary submissions that clearly ought not be presented to the jury because they clearly would be inadmissible for any purpose." *Jonasson,* 115 F.3d at 440.

**ANALYSIS**

Plaintiff and Defendants both filed a number of motions in limine. The parties agreed that the Court should grant the majority of the motions, which the Court did in previous orders. (*See* R. 134, 135, 156.) The Court now addresses the four remaining contested motions in limine, two each from Plaintiff and Defendants.

**I.      Defendants' Motions in Limine**

    **A.      Cost Projections in Life Care Plan**

Defendants' Motion in Limine Number 1 seeks to bar the testimony of Plaintiff's expert, Gary Yarkony, M.D., that relates to specific costs contained in his life care plan for Ms. Parker (the "Life Care Plan"). Defendants do not object to Dr. Yarkony's qualifications or methodology

in developing the Life Care Plan—rather, Defendants object to the costs of two specific items contained in it. Specifically, the Life Care Plan includes for Ms. Parker either a new custom home with 20 percent added to its cost for modifications, or the purchase of a new home plus the cost of modifications. The Life Care Plan also includes the purchase of a new van with wheelchair-accessible modifications every five years. Defendants argue that while Plaintiff may be entitled to the cost of modifications to her house or automobile, Plaintiff cannot be entitled to the cost of an entirely new house or new car. Thus, Defendants contend that the Court should not allow Dr. Yarkony to testify to the full cost of these items, as it will only confuse the jury. In response, Plaintiff argues that Defendants' objections relate to the weight of Dr. Yarkony's cost projections, not to their admissibility, and the Court should not bar this testimony. Instead, Defendants should cross-examine Dr. Yarkony on his cost estimates at trial.

Whether or not an expert's testimony is admissible is governed by Rule 702 of the Federal Rules of Evidence and the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Under Rule 702, an expert may testify if: a) the expert's specialized knowledge will assist the trier of fact; b) the testimony is based upon sufficient facts or data; c) the testimony is the product of reliable principles and methods; and d) the expert has applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702. The Seventh Circuit, pursuant to Rule 702 and *Daubert*, has developed a three-pronged approach to determining whether expert testimony is admissible. *See Myers v. Illinois Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010); *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007). The Court must determine: 1) whether the witness is qualified; 2) whether the expert's methodology is scientifically reliable; and 3) whether the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue.

4

*Myers*, 629 F.3d at 644.  In the court's role as gatekeeper, it is granted "wide latitude in performing its gatekeeping function and determining both how to measure the reliability of expert testimony and whether the testimony itself is reliable."  *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 810 (7th Cir. 2012) (quoting *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 894 (7th Cir. 2011)).

Here, Defendants do not contest Dr. Yarkony's qualifications or methodology.  Instead, Defendants contest only the relevancy of his conclusions.  In a medical malpractice action, "[d]amages are recoverable to the extent necessary to place the injured party in the position [s]he would have occupied if the wrong had not been committed."  *Clark v. Children's Memorial Hosp.*, 2011 IL 108656, ¶ 29, 353 Ill. Dec. 254, 955 N.E.2d 1065.  These damages can include modifications to an injured party's home or automobile necessitated by her health condition following the alleged malpractice.  *See Compton v. Ubilluz*, 353 Ill. App. 3d 863, 866-867, 289 Ill. Dec. 271, 819 N.E.2d 767 (2d Dist. 2004) (affirming trial court's decision to allow testimony from life care planner on entire cost of new home and van that contained modifications required by plaintiff's health condition).

Several other district courts in the Seventh Circuit under similar circumstances have denied pre-trial challenges to specific cost projections in life care plans, finding that the defendants should instead challenge them on cross-examination at trial.  *See Taylor v. Union Pac. R.R. Co.*, Civil No. 09-123-GPM, 2010 WL 3724287, at *3 (S.D. Ill. Sept. 16, 2010) (denying motion to exclude evidence of certain specific costs contained in a life care plan in part because those "are all matters that should be and doubtless will be aired before the jury on cross-examination"); *see also Runge v. Stanley Fastening Sys., L.P.*, No. 09-CV-130, 2011 WL 4903782, at *3 (S.D. Ind. Oct. 14, 2011) (citing *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th

Cir. 2000) ("The soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact…")).

Similarly here, the Court finds that Dr. Yarkony's testimony is relevant to Ms. Parker's potential damages. Rule 702 and *Daubert* set forth the minimal requirements for admissibility, and as long as the expert crosses that minimum threshold, as Dr. Yarkony does here, whether Plaintiff is entitled to the entire cost of a new home or car is an issue of fact to be resolved by the jury. To the extent that Defendants wish to challenge these costs, they may do so by cross-examining Dr. Yarkony at trial. *See Lapsley*, 689 F.3d at 817 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.") (quoting *Daubert*, 509 U.S. at 596, 113 S.Ct. 2786). Accordingly, the Court denies Defendants' Motion in Limine Number 1.

### B. References to Defendant Surgeons as "Captains of the Ship"

Defendants' Motion in Limine Number 4 seeks to bar Plaintiff's experts from referring to or identifying Defendant surgeons Mikhail or Rosen as the "captain of the ship." Defendants argue that Plaintiff's expert's use of the term will cause confusion with the "captain of the ship" doctrine of vicarious liability that the parties agree does not apply to the case, and mislead the jury about the applicable standard of care. In response, Plaintiff argues that her expert's use of the phrase is merely a colloquial expression and not meant to assert the application of the "captain of the ship" doctrine, but instead simply to convey that Defendant surgeons are the heads of the operating team and responsible for knowing the effects of the drugs they administer.

Federal Rule of Evidence 403 provides that the trial court, in its discretion, "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; *see also United States v. Foley*, 740 F.3d 1079, 1088 (7th Cir. 2014). The question is whether the probative value of the use of this expression by Plaintiff's experts is "substantially outweighed" by the danger of confusing the issues or misleading the jury.

In a medical malpractice action, a plaintiff must establish "the proper standard of care against which the defendant physician's conduct is measured." *Sullivan v. Edward Hosp.*, 209 Ill.2d 100, 112, 282 Ill. Dec. 348, 806 N.E.2d 645 (Ill. 2004) (quoting *Purtill v. Hess*, 111 Ill.2d 229, 241-42, 95 Ill. Dec. 305, 489 N.E.2d 867 (Ill. 1986)). Here, Plaintiff argues that her expert is using the phrase "captain of the ship" to help explain that the standard of care for a surgeon as the head of the operating room includes knowledge of the effects of a blood-thinning medication, whose use was recommended by a hematologist, that Defendants administered to Ms. Parker.

Alternatively, the "captain of the ship" doctrine in Illinois can apply to hold a surgeon vicariously liable for the negligent acts of others in the operating room if the surgeon failed to supervise them with reasonable care. *Foster v. Englewood Hosp. Ass'n*, 19 Ill. App. 3d 1055, 1059-63, 313 N.E.2d 255 (1st Dist. 1974); *see Forsberg v. Edward Hosp. & Health Servs.*, 389 Ill. App. 3d 434, 445, 329 Ill. Dec. 531, 906 N.E.2d 729 (2d Dist. 2009) (holding that the defendant surgeon was not vicariously liable under the "captain of the ship" doctrine as there was no evidence that the surgeon failed to supervise the nurses with reasonable care.) Plaintiff is not relying on this legal doctrine in her case.

The Court agrees with Defendants that the probative value of using the phrase "captain of the ship" to express the idea that a surgeon is the head of the operating room is substantially outweighed by the danger of confusing the issues or misleading the jury. The probative value of this expression is extremely limited because Plaintiff's experts can easily use a different phrase to express the same idea. Although the jurors will likely not be aware of the "captain of the ship" legal doctrine and the Court will not instruct them on it, there is a risk that the use of the phrase will confuse the jury and lead them to improperly impose liability vicariously on Defendants for the actions of the hematologist. This risk substantially outweighs the phrase's probative value because it can be mitigated so easily. For these reasons, the Court grants Defendants' Motion in Limine Number 4.

## II. Plaintiff's Motions in Limine

### A. Defendants' Multiple Expert Witnesses

In her Motion in Limine Number 11, Plaintiff seeks to exclude Defendants from presenting evidence through two different surgical expert witnesses, Dr. Sidney Rohrscheib and Dr. Guy Dugan, because such testimony would be cumulative. In response, Defendants argue that their testimony will not be duplicative because each will testify to different aspects of the care rendered by Defendants, just as Plaintiff's two disclosed surgical experts will presumably testify regarding different aspects of Plaintiff's care. In her reply, Plaintiff counters Defendants' arguments, and also argues for the first time that the testimony of Defendants' expert Dr. Robert Bell would also be cumulative.

The Court may exclude relevant evidence if its probative value is substantially outweighed by a danger of needlessly presenting cumulative evidence. Fed. R. Evid. 403; *Foley*, 740 F.3d at 1088. Along these lines, the Northern District of Illinois model Final Pretrial

8

Order states, "[o]nly one expert witness on each subject for each party will be permitted to testify absent good cause shown. If more than one expert witness is listed, the subject matter of each expert's testimony shall be specified." N.D. Ill. L.R. 16.1, Final Pretrial Order Form, n.7; *see also GuideOne Mut. Ins. Co. v. Berghaus Organ Co.*, No. 07-CV-50037, 2011 WL 1402869, at *3 (N.D. Ill. Apr. 13, 2011) (Kapala, J.); *Dahlin v. Evangelical Child and Family Agency*, No. 01-CV-1182, 2002 WL 31834881, at *5 (N.D. Ill. Dec. 18, 2002) (Kennelly, J.)

The Court is satisfied that the testimony of Defendants' expert Dr. Guy Dugan is not unduly cumulative of the testimony of Dr. Rohrscheib. Dr. Dugan's opinions focus on "the post-surgical management of [Ms.] Parker, the management of Ms. Parker's hyperkalemia…and the cardiac arrest she experienced." (R. 153-5, Dugan Rule 26 Rep. ¶ 1.) These events center on February 27 and 28, 2010. Dr. Rohrscheib's opinions on the other hand, focus on Ms. Parker's surgeries and her medical care from February 1 through February 5, 2010. (R. 153-2, Rohrscheib Am. Rule 26 Rep.) Although Plaintiff argues that there is some overlap in their likely testimony, the probative value of their testimony is not substantially outweighed by the danger that it will be unduly cumulative.

Plaintiff also argues that the testimony of Defendants' expert Dr. Bell is unduly cumulative of the testimony of Dr. Rohrscheib. As Plaintiff notes, however, she raises this issue for the first time in her reply brief and failed to argue it in her initial motion. (*See* R. 153, Pl.'s Reply, at 2.) Accordingly, Plaintiff has waived this issue. *See Darif v. Holder*, 739 F.3d 329, 336-337 (7th Cir. 2014) ("[A]rguments raised for the first time in a reply brief are waived.")

For these reasons, the Court denies Plaintiff's Motion in Limine Number 11.

B.  **Testimony of Dr. Ogundipe**

In her Motion in Limine Number 12, Plaintiff seeks to bar the testimony of Ms. Parker's treating hematologist, Dr. Olusola Ogundipe, regarding his opinion of whether Defendant surgeons' use of the anticoagulant Heparin during her bariatric surgery violated the surgical standard of care.  (*See* R. 143-1, Ogundipe Dep. Excerpts.)  Specifically, Plaintiff argues that: (i) Dr. Ogundipe is a hematologist and not qualified to testify about how surgeons typically use anticoagulants; (ii) Defendant surgeons did not contact Dr. Ogundipe to ask if he would have approved of the use of Heparin so his statements are irrelevant; (iii) Dr. Ogundipe cannot be another surgical expert for Defendants; (iv) Dr. Ogundipe's testimony at his deposition on this subject is hearsay not subject to an exception; and (v) Dr. Ogundipe volunteered his statements on this subject at his deposition—they were not in response to a question.  In response, Defendants argue that (i) Dr. Ogundipe regularly consults with surgeons as part of his practice, (ii) he certainly has the knowledge and expertise to comment on routine surgical practice and whether or not it comports with his suggested protocol, and (iii) he gave the statements at issue in response to questions at his deposition, and they were responsive to those questions.

As an initial matter, although Plaintiff does not explicitly address this issue, it appears that Defendants do not intend to have Dr. Ogundipe testify as an expert.  "Rule 26(a)(2) requires that expert witnesses be disclosed." *Tribble v. Evangelides*, 670 F.3d 753, 759 (7th Cir. 2012).  The "duty to disclose a witness *as an expert* is *not* excused when a witness who will testify as a fact witness *and* as an expert witness is disclosed as a fact witness." *Id*. at 759-760 (emphasis in original); *see Banister v. Burton*, 636 F.3d 828, 833 (7th Cir. 2011) ("*all* witnesses who are to give expert testimony under the Federal Rules of Evidence must be disclosed under Rule 26(a)(2)(A)") (emphasis in original) (quotation omitted).  Although Defendants list Dr.

Ogundipe as a possible witness in the Proposed Final Pretrial Order, they do not state that they intend to have him testify as an expert, and Defendants did not include Dr. Ogundipe in their Rule 26(a)(2) expert disclosures. (*See* R. 132, Proposed Final Pretrial Order, at 7; R. 111, Defs.' Rebuttal Expert Disclosures.) "Under Rule 37(c)(1) 'exclusion of non-disclosed evidence is automatic and mandatory…unless non-disclosure was justified or harmless.'" *Tribble*, 670 F.3d at 760 (quoting *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004)).

Plaintiff also argues that any expert opinion from Dr. Ogundipe would be needlessly cumulative of the disclosed opinions of Defendants' experts. As discussed above, the Court has discretion under Federal Rule of Evidence 403 to exclude testimony if its probative value is substantially outweighed by the danger of needlessly presenting cumulative evidence. The report of Defendants' expert Dr. Rohrscheib discloses that he intends to testify to the same opinion that Plaintiff objects to Dr. Ogundipe giving, namely that Defendant surgeons use of the anticoagulation drug Heparin did not violate the surgical standard of care. (*See* R. 153-2, Rohrscheib Am. Rule 26 Rep.). In their brief response, Defendants fail to address this issue. Accordingly, the Court grants Plaintiff's Motion in Limine Number 12. Defendants will not be allowed to use Dr. Ogundipe to present expert testimony regarding whether the Defendant surgeons' use of the anticoagulant Heparin during her bariatric surgery violated the surgical standard of care. The Court notes, however, that this order shall not preclude Dr. Ogundipe from testifying as a fact witness.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motions in part and denies them in part, and grants Plaintiff's motions in part and denies them in part.


DATED:  January 8, 2015                                     ENTERED

                                                                                  AMY J. ST. EVE
                                                                                  United States District Court Judge